**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

LISA MARIE S.,

                                                    Plaintiff,

          v.

                                                                                    No. 5:20-CV-975
COMMISSIONER OF SOCIAL SECURITY,                    (CFH)


                                                    Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

Olinsky Law Group                             HOWARD D. OLINSKY, ESQ.
250 South Clinton Street, Suite 210
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration                MOLLY CARTER, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Rm. 625
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

          Lisa Marie S.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for disability insurance benefits.  See Dkt. No. 1

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 7.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff's last name by initial only.

("Compl."). Plaintiff moves for reversal and remand for the determination of benefits. See Dkt. No. 13. The Commissioner opposes the motion. See Dkt. No. 14. For the following reasons, the Commissioner's decision is affirmed.

# I. Background

On February 14, 2017, plaintiff filed a Title XVI application for supplemental security income. See T. at 164.[3] Plaintiff alleged a disability onset date of January 1, 2014. See id. The Social Security Administration ("SSA") denied plaintiff's claim on April 13, 2017. See id. at 76-79. Plaintiff requested a hearing, see id. at 84, and a hearing was held on November 8, 2018, before Administrative Law Judge ("ALJ") Gretchen Mary Greisler. See id. at 27-61. On April 17, 2019, the ALJ issued an unfavorable decision. See id. at 10-20. On June 22, 2020, the Appeals Council denied plaintiff's request for review. See id. at 1-5. Plaintiff commenced this action on August 21, 2020. See Compl.

# II. Legal Standards

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g),

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 10. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks, citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the

> [Commissioner] will consider him [or her] disabled without
> considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a
> claimant who is afflicted with a "listed" impairment is unable
> to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-

disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas,

540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each

of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  Id. (citing Berry, 675 F.2d at 467).


### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined

that plaintiff had not engaged in substantial gainful activity since February 14, 2017, her

application date.  See T. at 12.  At step two, the ALJ found that plaintiff had the following

severe impairments: "status post valvular replacement, Coumadin therapy, arrythmia,

aortic stenosis, depressive disorder, anxiety disorder, history of substance abuse,

obesity, and migraine headache[s.]"  Id.  At step three, the ALJ determined that plaintiff

5

did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  See id. at 13.  The ALJ considered Listings 12.04 for depressive, bipolar,

and related disorders; and 12.06 for anxiety and obsessive-compulsive disorders.  See

id.  The ALJ found that plaintiff's mental impairments resulted in: "moderate restriction[s]

in understanding, remembering or applying information; moderate difficulties in

interacting with others; moderate difficulties in maintaining concentration, persistence or

pace; and moderate difficulties in adapting or managing oneself."  Id.  The ALJ further

found that because plaintiff did not have at least two "marked" limitations or one

"extreme" limitation, "the 'paragraph B' criteria [we]re not satisfied" and because the

"record does not establish that [plaintiff] has only marginal adjustment," the "paragraph

C" criteria were not satisfied.  Id. at 14.

    Before reaching step four, the ALJ concluded that plaintiff retained the residual

functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b)

except

> [she] can tolerate no more than moderate levels of noise . . . and should
> avoid work outdoors in bright sunshine and work with bright or flickering
> lights, such as would be experienced in welding or cutting metals.  The
> claimant can occasionally stoop, balance, crouch, kneel, crawl and climb
> stairs and ramps.  The claimant cannot climb ladders, ropes or scaffolds
> or work at unprotected heights or in close proximity to dangerous
> machinery.  The claimant can perform work which does not require more
> than simple, short interactions with supervisors and coworkers and no
> more than incidental contact with the public; and, although the claimant
> can work in proximity with others, the tasks perform[ed] should not require
> working in conjunction with others, and should predominantly involve
> working with objects rather than people.  The claimant can perform simple,
> routine and repetitive tasks in a work environment free of fast-paced
> production requirements and involving only simple, work-related decisions.
> The claimant must work in a stable setting where little change occurs in

terms of the tools used, the processes employed or the setting itself, and change, where necessary, is introduced gradually.

T. at 14-15.  At step four, the ALJ determined that plaintiff was unable to perform relevant past work.  See id. at 18.  At step five, considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, since February 14, 2017, the date the application was filed[.]"  Id. at 19.

### IV. Arguments[4]

Plaintiff argues that "[t]he ALJ's mental RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the mental health opinion evidence, including treating and examining opinion evidence highly supportive of disability."  Dkt. No. 13 at 3.  Specifically, plaintiff contends that the ALJ did not afford enough weight to plaintiff's treating therapist Janet Atkinson, LCWS-R, despite her findings being supported by objective medical evidence and corroborated by treating and consultative physicians' opinions.  See id. at 17-19.  The Commissioner argues that the ALJ afforded appropriate weight to the medical providers' opinions and her RFC determination is supported by substantial evidence.  See Dkt. No. 14.

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF at the pages' headers.

**V. Discussion**

A plaintiff's RFC is defined as "what an individual can still do despite his or her limitations. . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  Id. (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"  Hendrickson v. Astrue, No. 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, Social Security Rulings ("SSR") 85-15, 1985 WL 56857, at *6 (1985)).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  A mental health "RFC assessment process requires 'a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . .'"  Linda E. v. Saul, No. 3:19-CV-357 (NAM), 2020 WL 1875671, at *8 (N.D.N.Y. Apr. 15, 2020) (quoting Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996)).

"Part and parcel to the RFC determination is the ALJ's review of the medical opinion evidence . . . ." Dumas v. Comm'r of Soc. Sec., No. 7:13-CV-1099 (GTS/TWD), 2015 WL 1403342, at *13 (N.D.N.Y. Mar. 26, 2015). "Under the treating physician rule, the medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals." Id. at *8. "An ALJ may refuse to consider the treating physician's opinion controlling only if he is able to set forth good reason for doing so." Saxon v. Astrue, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). "'[M]edical opinions' are defined as 'statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his or her] symptoms, diagnosis, prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions.'" Leonard W. v. Saul, No. 5:18-CV-00993 (DNH/CFH), 2020 WL 896904, at *4 (N.D.N.Y. Feb. 25, 2020), report and recommendation adopted, 2020 WL 1169400 (N.D.N.Y. Mar. 11, 2020) (alterations in original) (quoting 20 C.F.R. § 404.1527(a)(1)). "Acceptable medical sources" include licensed physicians (medical or osteopathic doctors) psychologists, optometrists, podiatrists, and speech-language pathologists. 20 C.F.R. § 404.1513(a)(1)-(5) (effective Sept. 3, 2013 to Mar. 26, 2017). Additionally, "an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." Baszto v. Astrue, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010). "The opinions of consultative examiners . . . may constitute substantial evidence where[] . . . [they are] supported by the medical evidence in the record." Frawley v. Colvin, No. 5:13-CV-1567 (LEK/CFH), 2014 WL 6810661, at *9 (N.D.N.Y. Dec. 2, 2014).

"The regulations note that, '[i]n addition to evidence from acceptable medical sources [the Commissioner] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work.'" Leonard W., 2020 WL 896904, at *4 (alteration in original) (quoting 20 C.F.R. § 404.1513(d)).  "Opinions from medical sources that are not considered acceptable medical sources are important and should be evaluated on key issues such as impairment severity and functional effects."  Saxon, 781 F. Supp. 2d at 103 (citations and internal quotation marks omitted).  "Social workers are defined as 'other sources'." Id.; see Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies, SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006).  "In weighing the opinions of 'other sources', the ALJ must use the same factors for the evaluation of the opinions from 'acceptable medical sources' enumerated in 20 C.F.R. 404.1527(d)."  Saxon, 781 F. Supp. 2d at 104 (citing Canales v. Comm'r of Soc. Sec., 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)).  "The ALJ is free to conclude that the opinion of a licensed social worker is not entitled to any weight, [but], the ALJ must explain that decision."  Id.  Moreover, "[b]ased on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician."  Id. (citations omitted).  "[A]n ALJ's RFC need not perfectly correspond with one single medical opinion[.]"  Sarah C. v. Comm'r of Soc. Sec., No. 5:19-CV-1431 (FJS), 2021 WL 1175072, at *20 (N.D.N.Y. Mar. 29, 2021).

This Court has explained "that the ALJ was obligated to give some consideration and weight to [the social worker's] opinion in light of his qualifications and familiarity with the [p]laintiff." Lint v. Astrue, No. 1:07-CV-0479 (NAM/VEB), 2009 WL 2045679, at *9 (N.D.N.Y. July 8, 2009).  This Court determined that an "appropriate level" of weight was given to the plaintiff's social worker therapist where the ALJ "appear[ed] to have incorporated [the social worker's] concerns regarding [the] [p]laintiff's social interaction skills by recognizing [the] [p]laintiff's limited ability to interact with the public and incorporating that limitation into his residual functional capacity analysis." Id. Additionally, it was appropriate for the ALJ to reject the extent of the social worker's conclusion that it would be "hard to imagine [the plaintiff] being able to work in most any situation[]" because the state agency physician opined that the plaintiff "was only moderately limited with regard to her activities of daily living, social functioning, and ability to maintain concentration, persistence, and pace." Id. at *7; see also Richards v. Colvin, No. 3:12-CV-1086 (FJS), 2015 WL 1472039, at *5 (N.D.N.Y. Mar. 31, 2015) (affirming the ALJ's decision that the plaintiff's "bipolar disorder would moderately limit her ability to perform a number of tasks, where that physician's statements conflict with her own treatment notes and was directly contradicted by the expert physician's opinion.").

"[A]n ALJ's conclusion need not perfectly correspond with any of the opinions of the medical sources cited in his decision, however 'when an ALJ credits only portions of a medical source opinion, the ALJ must explain why other portions of the opinion were rejected.'" Paula W. v. Comm'r of Soc. Sec., No. 8:18-CV-659 (MAD/ATB), 2019 WL 5150078, at *10 (N.D.N.Y. Aug. 28, 2019), report and recommendation adopted sub

nom. 2019 WL 4564859 (N.D.N.Y. Sept. 20, 2019) (citations omitted).  An ALJ's explanation for the RFC determination, in light of the weight given to the various medical opinions, was insufficient for the Court to glean the ALJ's rationale where the ALJ afforded the plaintiff's treating psychiatrist's opinion "evidentiary weight" but "chose not to incorporate certain limitations[.]"  Id. at *10-11.  Additionally, the ALJ relied on the state agency expert's opinion "based on its consistency with the 'longitudinal record,' which necessarily included the in-depth, thorough treatment records and opinion provided by treating psychiatrist . . . ."  Id. at *11.  However, the state agency physician's opinion was contradicted by the treating psychiatrist's "in some significant ways, and the ALJ failed to provide an explanation reconciling these conflicts."  Id.  The Court noted that "[o]ther [] courts within the Second Circuit have held that a marked limitation does not necessarily constitute an inability to perform work, and have affirmed decisions denying benefits in cases where the record contains an opinion that the claimant has a marked limitation in performing a work related function."  Id. (citing Davis v. Comm'r of Soc. Sec., No. 17-CV-6804P (MWP), 2019 WL 1870814, at *3 (W.D.N.Y. Apr. 26, 2019); Terri G. v. Comm'r of Soc. Sec., No. 3:18-CV-0066 (CFH), 2019 WL 1318074, at *9 (N.D.N.Y. Mar. 21, 2019)).  Nevertheless, the Court determined that the ALJ relied on the "treating physician's opinion finding marked limitations in multiple functions" and the failure to explain how the RFC accounted for these limitations constituted reversible error.  Id.

This Court has also remanded where an "ALJ's failure to explain why he chose not to incorporate certain limitations set forth in the medical source statement despite explicitly affording great weight to [the] opinion le[ft] the ALJ's otherwise thorough

decision lacking the clarity necessary to enable th[e] Court to determine whether the ALJ's findings [were] supported by substantial evidence." Lawrence W. v. Comm'r of Soc. Sec., No. 5:17-CV-0877 (TWD), 2018 WL 4509490, at *8 (N.D.N.Y. Sept. 18, 2018).  Although "a lack of explanation is not error where the reviewing court can determine the underlying rationale[,]" the ALJ failed to explain how the plaintiff's ability to "prepare simple meals . . ., attend to his personal care, travel independently and ride his bicycle every day, play video games, perform 'all chores' around the house, and engage in landscaping . . . 'translated to the ability to perform the mental demands of substantial gainful work in a typical competitive workplace environment.'" Id. (quoting Coyle v. Comm'r of Soc. Sec., No. 5:17-CV-0924 (WBC), 2018 WL 3559073, at *7 (N.D.N.Y. July 24, 2018) (citations omitted)).  Similarly, where "the ALJ gave 'little weight' to every source that actually examined [the plaintiff], and she gave 'some weight, but not great weight' to the two nonexamining consultative evaluations[]" remand was warranted because only one source found that the plaintiff would "be capable of the full range of unskilled work[,]" and it was based on an incomplete review of the record.  Bleil v. Colvin, No. 3:15-CV-1492 (LEK/ATB), 2017 WL 1214499, at *7 (N.D.N.Y. Mar. 31, 2017).  Rather, "[e]very other source found greater mental limitations than those accounted for in the ALJ's mental RFC[]" and "[t]he lack of supporting medical source opinion alone casts serious doubt on the ALJ's RFC determination." Id. at *7-8; see also Hall v. Colvin, No. 1:15-CV-01189 (LEK/ATB), 2016 WL 6989806, at *7 (N.D.N.Y. Nov. 29, 2016) (remanding where the ALJ determined the treating social worker's opinion was "internally inconsistent" but "[t]he alleged inconsistency disappears when one realizes" that the plaintiff's "panic attacks" were triggered by crowds;

13

therefore, the plaintiff seeming normal and capable of performing basic tasks in front of her therapist was an insufficient basis to give the opinion less weight).

### a. Relevant Medical Opinions

### 1. Janet Atkinson, LCWS-R

Plaintiff argues that Ms. Atkinson's opinions should have been afforded greater weight because they are supported by objective evidence, and substantiated by opinions from Gregory Max, M.D., Amy McCune, P.A., and Jeanne Shapiro, M.D.  See Dkt. No. 13 at 18-19.  The ALJ discounted Ms. Atkinson's opinion, in part, because the record reflected that plaintiff had less anxiety as she "gets further away from the opiates"; therefore, Ms. Atkinson's conclusion that plaintiff's "substance abuse does not affect her ability to function is not consistent with counseling records[.]"  T. at 16. Plaintiff contends that "[t]his reference is irrelevant, and a mischaracterization of the evidence," because Ms. Atkinson's "opinion was created *after* any prior substance abuse issue had been resolved."  Dkt. No. 13 at 19-20.  Finally, plaintiff argues that the ALJ relied on records showing that plaintiff's mental health was stable or improving with medication but ignored the records that indicate otherwise.  See id. at 17-18.  The Commissioner argues that because Ms. Atkinson is not an acceptable medical source, her opinion is not a "medical opinion" and the ALJ was not required to give it controlling weight or special deference, and that regardless of the weight given, the ALJ's decision is supported by substantial evidence.  Dkt. No. 14 at 7.

The ALJ gave "limited weight" to Ms. Atkinson's July 2018 opinions because "they are not supported by the objective evidence in record, including counseling records from [her] office."  T. at 16 (citing id. at 357-60).  The ALJ explained that

"updated counseling records . . . indicated that [plaintiff] was fully oriented with normal gait and station, well-groomed appearance, normal psychomotor activity, good eye contact, cooperative behavior, neutral affect, normal speech, coherent thought process, intact association, appropriate perception, good cognition, average intelligence, average fund knowledge, and fair insight and judgment[.]"  Id.; see id. at 385.  Moreover, "[w]ith the exception of changes in her mood and affect, counseling records routinely described [plaintiff's] mental status evaluation was within normal range[.]"  Id. at 16; see id. at 397, 403, 421, 428.  "These clinical findings are inconsistent with the significant functional limitations identified by LCWS-R Atkinson . . . ."  Id. at 16.  The ALJ also emphasized Ms. Atkinson's treatment note stating that plaintiff "was able to advocate for her needs[,]" and determined that the record showed that plaintiff's "medications were working well to control her depression and anxiety[.]"  Id.; see id. at 384, 390.  Finally, the ALJ noted that "Atkinson's conclusion that [plaintiff's] substance abuse does not affect her ability to function is not consistent with counseling records, which showed that [plaintiff] had less anxiety as she 'gets further away from the opiates[.]'"  Id. at 16 (citing id. at 595).

Ms. Atkinson's 2018 medical source statement indicated that plaintiff "continues to build her skills to manage anxiety symptoms.  I do not believe she is ready to maintain skills to have success with work."  T. at 358.  In identifying plaintiff limitations, Ms. Atkinson opined that plaintiff would be "unable to meet competitive standards" in remembering work-like procedures; maintaining attention for two hours, regular attendance, and punctuality; sustaining an ordinary routine without special supervision; working in coordination with others; making simple, work-related decisions; completing

a normal workday without interruptions from her symptoms; accepting and responding appropriately to instructions and changes in a routine work setting; dealing with normal, work-related stress; traveling in unfamiliar places; and using public transportation.  Id. Ms. Atkinson also determined that plaintiff would be "seriously limited, but not precluded" from understanding, remembering, and carrying out very short and simple instructions; asking simple questions or requesting assistance; getting along with coworkers or peers; being aware of normal hazards and taking appropriate precautions; maintaining socially appropriate behavior; and adhering to basic standards of neatness and cleanliness.  Id.

Throughout Ms. Atkinson's treatment record, plaintiff was oriented, well groomed, cooperative, had a coherent thought process, and wore appropriate attire.  See T. at 385, 409, 413, 417-18, 429, 437, 441, 454-55, 464, 468, 508, 530.  Plaintiff's judgment and insight varied from poor to good, but was most often fair.  See id.  During her initial examination, plaintiff stated that she had a history of substance abuse and was using suboxone to help her quit using other drugs.  See id. at 529.  Ms. Atkinson noted that plaintiff was concurrently receiving substance abuse treatment at Farnham Family Services ("Farnham"), that she was making good use of group therapy there, and after leaving Farnham, she returned for more treatment.  See id. at 412, 453, 509, 663.  The record also reflects that plaintiff later stopped using suboxone and was "very proud of herself.  She is also down to minimal Xanax and working on stopping."  Id. at 439. Plaintiff had also asked for a different counselor at Farnham and advocated "for keeping the water on in her home."  Id. at 384, 396.

Contrary to the ALJ's contention that Ms. Atkinson concluded that plaintiff's substance abuse "does not affect her ability to function," Ms. Atkinson opined that the following limitation "<u>would</u> affect [plaintiff's] ability to work at a regular job on a sustained basis: [Plaintiff's] treatment is frequent at this time, <u>Substance Abuse Treatment</u>, MH Therapy, Medication Management[.]"  T. at 359 (emphasis added).  In her medical source statement, Ms. Atkinson answered "No" to the question: "In your opinion would the current physical and mental limitations remain if the patient stopped using drugs and/or alcohol?"  <u>Id.</u> at 360.  In her explanation she stated, "[plaintiff] has stopped substance abuse at this time.  Anxiety symptoms, Depression symptoms continue to be a barrier.  Continues to require frequent contact with treatment."  <u>Id.</u>

Plaintiff argues that the ALJ erred because Ms. Atkinson's opinions are supported by Gregory Max, M.D., Amy McCune, P.A., and Dr. Shapiro.  Dkt. No. 13 at 19.  Dr. Max opined that plaintiff had no limitations in maintaining basic standards of personal hygiene and grooming; moderate limitations in understanding, remembering, and carrying out instructions, and maintaining socially-appropriate behavior; and was "very limited" in maintaining attention and concentration, making simple decisions, and functioning in a work setting at a consistent pace.  T. at 618.[5]  The ALJ gave Dr. Max's opinion limited weight because his opinions were inconsistent with updated treatment records or unsupported by objective evidence in the record, and he "failed to provide any objective clinical findings to support his conclusions."  <u>Id.</u> at 16.  The ALJ explained that "[a]lthough I have accounted for the no limitations and moderate limitations identified by Dr. Max by limiting the claimant to simple work activity with limited social

---

[5] It is unclear whether Dr. Max marked "no evidence of limitations[,]" "moderately limited[,]" or both, as it relates to plaintiff's ability to interact appropriately with others.  T. at 618.

17

interactions in a work environment free of fast-paced production requirements, I find that the remainder of the limitations he identified are not supported by the objective evidence in the record that I previously cited." Id.[6]  As explained in more detail below, Dr. Shapiro opined that plaintiff had no limitations in understanding and applying simple directions, in using reasoning and judgment in work-related situations, or in being aware of hazards and taking precautions, but mild limitations with complex directions, mild-to-moderate limitations in sustaining an ordinary routine and concentration, moderate limitations in maintaining personal hygiene, and moderate-to-marked limitations in regulating emotions. See id. at 317.

As plaintiff points out, PA McCune opined that in May 2018, plaintiff's depression and anxiety were "not optimal."  Dkt. No. 13 at 19 (citing T. at 446).  The ALJ did not explicitly discuss PA McCune's treatment records or explain any weight given.  See T. at 16-18.[7]  However, in explaining the objective evidence that "support[s] the established" RFC,[8] the ALJ cited to PA McCune's treatment notes to show that "[w]ith the exception of changes in her mood and affect, which supports the existence of a 'severe' mental impairment, counseling records routinely described the claimant's mental status evaluations within normal range[.]"  Id. at 17 (citing id. at 392-94, 403-05, 421-23, 448-449).  Moreover, the ALJ pointed to PA McCune's treatment records that

---

[6] As the Commissioner correctly points out, plaintiff does not take issue with the ALJ's consideration of Dr. Max' opinion.  See Dkt. No. 14 at 14.

[7] Plaintiff does not take issue with the ALJ's consideration of PA McCune's treatment records.  See Dkt. No. 13.

[8] These records are not located in the section where the ALJ explains the weight give to Ms. Atkinson's opinion; however, the Court may still consider them in determining if the ALJ's decision is based on substantial evidence.  See Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112 (2d Cir. 2010) (summary order) ("[T]he absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'") (citation omitted).

indicated that plaintiff "reported that Xanax was helpful" and "her medications were working well to control her depression and anxiety[.]"  Id. at 18 (citing id. at 420, 390).

The ALJ discounted Ms. Atkinson's opinion, in part, because of her "conclusion that the claimant's substance abuse does not affect her ability to function is inconsistent with counseling records[.]"  T. at 16.  This misstates the record as Ms. Atkinson stated the opposite and explained that plaintiff's substance abuse would affect her ability to work.  See id. at 359-60; see also Hall, 2016 WL 6989806, at *8 ("Thus, this basis for giving little weight to [the] assessment is not supported by the evidence in the record.").  The ALJ also discounted Ms. Atkinson's opinions because "they are not supported by the objective evidence in the record[.]"  T. at 16.  However, as plaintiff points out, some of Dr. Max's, PA McCune's, and Dr. Shapiro's records are consistent with Ms. Atkinson's conclusions—they each opine that plaintiff was struggling with her anxiety and depression and had limitations in her abilities to interact with others, and understand and carry out instructions.  See id. at 421, 443, 446, 618.  Nevertheless, PA McCune's records indicated that plaintiff's anxiety and depression were improving with medication; Dr. Shapiro found that plaintiff had no limitations with understanding simple instructions; and Dr. Max found that plaintiff had no limitations in maintaining personal hygiene.  See id. at 317, 420, 618.  Therefore, although portions of the various opinions support plaintiff's argument, there is evidence in the record inconsistent with Ms. Atkinson's opinions, including the other providers' opinions.  See T. at 16; see Rosado, 805 F. Supp. 147 at 153 (remand is not required "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the

19

evidence may differ from the [Commissioner's][,]" so long as there is substantial evidence supporting the ALJ's conclusions).

The ALJ explained that "[w]ith the exception of changes in [plaintiff's] mood and affect, counseling records routinely described the claimant's mental status as within normal range." T. at 16. Those same records note that plaintiff's "[d]epression and anxiety [were] elevated[,]" and she continued to feel sad, afraid, and stuck about her home life. Id. at 421, 426. Moreover, the ALJ noted that plaintiff stated that "Xanax was helpful[.]" Id. at 18. The record the ALJ cites to support this contention reads: "Long-standing history of anxiety and depression. Numerous prior medication trials, including but not limited to Ativan, Xanax, Porzac, Zoloft, Celexa, Cymbalta, Seroquel, Ambien. Patient reported to have stated that Xanax is the only medicine that works for her." Id. at 420.[9] This same record also states that plaintiff's "[d]epression and anxiety [were] elevated," and her dosage of Venlafaxine was increased as a result. Id. at 421. The record reflects that plaintiff was weening herself off of Xanax. See id. at 439; cf. Stacy D. v. Comm'r of Soc. Sec., 358 F. Supp. 3d 197, 210 (N.D.N.Y. 2019) ("[T]he ALJ cannot 'pick and choose' evidence in the record that supports his conclusions.") (citations omitted). Although the most effective medication changed over time, plaintiff's most recent mental health records from September 2018 reflected that her medications were "working well to control [plaintiff's] depression and anxiety[.]" T. at 390.

The record further supports the ALJ's conclusions where it reflects that plaintiff had consistently fair to good insight, judgment, and cognition; was well groomed, and

---

[9] The notation that plaintiff reported that "Xanax is the only medicine that works for her[,]" is in plaintiff's "past psychiatrist HX detail" on numerous records from "BHS Oswego" and was not a reflection of her mental status or working medications at the time of her treatments. T. at 402, 420, 431, 459, 471.

wore appropriate attire; and was oriented and cooperative.  See T. at 413, 417-18, 429,

437, 441, 454, 464, 468-69, 508, 530.  Although Ms. Atkinson opined that plaintiff would

be seriously limited but not precluded from asking simple questions or requested

assistance, as the ALJ noted, plaintiff had recently advocated for her needs in keeping

her water on.  See id. at 16, 358, 384.  Additionally, plaintiff had asked for a new

counselor at Farnham when she felt "she just could not say some things to the one she

had."  See id. at 396.  The ALJ does not need to "explicitly explain[] every detail of why

he . . . considered particular evidence persuasive or not persuasive."  Dale A. M. v.

Comm'r of Soc. Sec., No. 5:19-CV-1150 (FJS), 2021 WL 1175160, at *23 (N.D.N.Y.

Mar. 29, 2021) (citation and quotation marks omitted).  The ALJ was also not required to

give Ms. Atkinson's opinions controlling weight as she is not an "acceptable medical

source," but was required to explain her reasons for giving "limited weight" to the

opinion.  Saxon, 781 F. Supp. 2d at 103; see Lawrence, 2018 WL 4509490, at *8 (giving

"great weight" to an opinion but failing to incorporate limitations); Paula W., 2019 WL

5150078, at *10 (giving treating physician's opinion "evidentiary weight" but declining to

incorporate limitations or explain rationale) (emphasis added).

      Although the ALJ relied on a mischaracterization of the record, the ALJ noted the

records reflecting plaintiff's poor mood, judgment, and insight, alongside those

indicating an improvement in plaintiff's mental health through treatment and medication.

See T. at 16-18.  That there is evidence supporting plaintiff's perspective is insufficient

for remand where the Court can glean the ALJ's rationale.  See Bonet ex rel. T.B. v.

Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (The question before the

Court is not "whether there is substantial evidence supporting the appellant's view[,]" but

"whether substantial evidence supports the ALJ's decision.") (emphasis omitted).  As the ALJ's RFC is supported by substantial evidence, remand is not warranted.

### 2. Jeanne Shapiro, M.D.

Plaintiff argues the ALJ failed to give appropriate weight to Dr. Shapiro where her opinion "was well-supported by both her clinical interview and concurrent mental status examination," and the failure to incorporate the opinion requires remand because Dr. Shapiro's opinion is "preclusive of work."  Dkt. No. 13 at 22; 21.  The Commissioner argues that the ALJ appropriately determined that Dr. Shapiro's opinion was inconsistent with her own examination findings; therefore, giving partial weight to her opinion was warranted.  See Dkt. No. 14 at 16.

The ALJ concluded that Dr. Shapiro's medical source statement supported "the conclusion that [plaintiff] has the ability to perform simple work."  T. at 16.  The ALJ gave Dr. Shapiro's opinions "partial evidentiary weight" because although she examined plaintiff, "her conclusions are not fully consistent with the results of her own examination."  Id. at 16 (citing id. at 316-17).  In explaining her RFC determination, the ALJ noted that "[a]t the consultative evaluation, with the exception of constricted affect, sad mood, and poor insight and judgment, the claimant's mental status evaluation was normal[.]"  Id. at 17 (citing id. at 316-17).  In determining whether plaintiff's impairments met a Listing, the ALJ recounted Dr. Shapiro's findings that plaintiff had no limitations in understanding, remembering, or applying simple directions and instructions; was corporative; had an intact memory, attention, and concentration; and had moderate to marked limitations for regulating emotions, controlling behavior, and maintaining well-being.  See id. at 13-14.  The ALJ explained that although Dr. Shapiro found a

moderate-to-marked limitation in maintaining plaintiff's well-being, she "reported to a wide-range of daily activities." Id. at 14. In creating plaintiff's RFC, the ALJ explained plaintiff's "broad range of daily activities" as cooking, cleaning, doing laundry, going shopping, doing chores, and engaging in leisure activities. Id. at 18.

During Dr. Shapiro's examination, plaintiff stated that she was "anxious and depressed for no particular reason[]" and had "difficulty concentrating and remembering things." T. at 315. Plaintiff reported no drug history. See id. Plaintiff also reported that she could dress, bathe, and groom herself independently, "only changes her clothes when she has an appointment[,]" and feels she "has no reason to get up, bathe, cook, or do anything." Id. at 317; 315. Dr. Shapiro found plaintiff to be appropriately dressed, and "[h]er personal hygiene and grooming was good with the exception that her hair sorely needed to be combed." Id. at 316. Plaintiff was responsive, cooperative, oriented, and had a coherent thought process. See id. Plaintiff appeared sad, her affect was restricted, and she had poor insight and judgment. See id. Plaintiff's attention and concentration were intact; she was able to do counting and simple calculations; her recent and remote memory skills were intact; and "[s]he was able to recall three objects immediately and after four minutes and restate five digits forward and four digits backward." Id. Dr. Shapiro opined that plaintiff had no limitations in understanding, remembering, or applying simple directions and instructions, but had mild limitations in the same for complex directions and instructions, "given that she complains of member and concentration deficits." Id. at 316. Dr. Shapiro also opined that plaintiff had no limitations in reasoning and judgment with work-related decisions and had mild-to-moderate limitations in sustaining concentration and performing a task

at a consistent pace.  See id.  Additionally, plaintiff appeared to have mild-to-moderate limitation sustaining an ordinary routine and regular attendance at work, as well as moderate limitations in maintaining personal hygiene and wearing appropriate work attire.  See id.  Finally, Dr. Shapiro determined that plaintiff had moderate-to-marked limitations regulating emotions, controlling behavior, and maintaining well-being.  See id.  Dr. Shapiro stated that the "[r]esults of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis."  Id. at 317.  Moreover, plaintiff's "prognosis is fair" but she "appears to be incapable of managing money because she spends money and does not remember doing it."  Id. at 318.

The ALJ summarily asserts that "Dr. Shapiro's opinion is not entitled to greater weight, because her conclusions are not fully consistent with the results of her own examination[,]" but fails to identify and explain the inconsistences.  T. at 16.  The ALJ relied on plaintiff's activities of daily living to support her RFC determination and to discount Dr. Shapiro's findings.  See id. at 14, 18.  It is unclear how plaintiff's ability to cook and clean equate to Dr. Shapiro's findings being inconsistent with her conclusions or how they reflect plaintiff's ability to perform work-related functions.  See Lawrence W., 2018 WL 4509490, at *5; see also SSR 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").  However, Dr. Shapiro's conclusion that plaintiff had moderate limitations in maintaining personal hygiene or being able to dress for work

is inconsistent with her findings that plaintiff appropriately dressed for the examination, had good hygiene, and reported that she was able to dress, bathe, and groom independently.  See T. at 315-17.  Additionally, Dr. Shapiro found that plaintiff had mild limitations in understanding complex directions because of plaintiff's "complain[t]s of memory and concentration deficits" but objectively noted that plaintiff was able to perform simple counting and calculations and had an intact memory.  Id. at 317; 316. The remainder of Dr. Shapiro's findings appear consistent with her conclusions, including her opinion that plaintiff has no limitations in understanding and applying simple directions; moderate-to-marked limitations regulating emotions, controlling her behavior, and maintaining her well-being; that her ability to function on a daily basis may be significantly impacted; and she cannot manage money.  See id. at 317-18; see Hall, 2016 WL 698906, at *8 (The ALJ "should not have manufactured inconsistencies in determining the weight to be accorded to [the] opinion.").

Although the ALJ did not explicitly identify the inconsistencies in Dr. Shapiro's evaluation, the ALJ's RFC determination reflects most of Dr. Shapiro's opined limitations.  For example, Dr. Shapiro opined that plaintiff had "mild-moderate limitations sustaining concentration and performing a task at a consistent pace[,]" T. at 317, and the ALJ limited plaintiff to "simple, routine and repetitive tasks in a work environment free of fast-paced production[.]"  Id. at 14.  Additionally, Dr. Shapiro opined that plaintiff had "mild-moderate limitations sustaining an ordinary routine[,]" id. at 317, and the ALJ limited plaintiff to "work in a stable setting where little change occurs . . . and change, where necessary, is introduced gradually."  Id. at 14-15.  No logical bridge can be drawn between plaintiffs' ability to cook and clean and her ability to perform work-related

functions on a sustained basis; however, the Court can otherwise glean the ALJ's rationale—that plaintiff had moderate limitations in all four of the relevant categories. See Lawrence W., 2018 WL 4509490, at *8; compare Bleil, 2017 WL 1214499, at *6 (finding error in the ALJ's weighing of the medical opinions where the plaintiff's social worker therapist opined that the limitations would prevent unskilled work, and the examining medical consultants found that the plaintiff's "psychiatric and cognitive issues . . . may significantly interfere with the claimant's ability to function on a daily basis."), with Ross v. Colvin, No. 13-CV-6332P (MWP), 2015 WL 1189559, at *12 (W.D.N.Y. Mar. 16, 2015) (finding that the ALJ sufficiently incorporated a physician's opined concentration limitations by limiting the plaintiff to "only simple work-related decisions and maintain[ing] attention and concentration for only two-hour segments.").  Because the ALJ incorporated Dr. Shapiro's limitations into plaintiff's RFC, remand is not warranted on this ground.

### 3. James V. Perrone, Ph.D.

Plaintiff argues that the ALJ gave too much weight to Dr. Perrone's "unsubstantiated claims" because Dr. Perrone "clearly had no grasp on [p]laintiff's condition, and did not even bother to explain his opinion."  Dkt. No. 13 at 23.  Plaintiff argues that Dr. Perrone's opinion that plaintiff's limitations were "due to her purported substance abuse issues[]" is inaccurate and based on "pure speculation" because plaintiff was no longer abusing substances at the time of Dr. Perrone's report.  Id.  The Commissioner argues that the record supports Dr. Perrone's findings "including relatively unremarkable objective findings, responsiveness to treatment, and [p]laintiff's activities."  Dkt. No. 14 at 19.

26

The ALJ gave "significant weight to Dr. Perrone's opinion, because Dr. Perrone had an opportunity to review all of the record[,]" and "[a]lthough he is neither an examining nor a treating physician, [he] is a medical expert in psychology, that provides him with knowledge, and training, which could reasonably be expected to give him greater insight into the limitations imposed by [plaintiff's] mental limitations." T. at 15-16. "Furthermore, as a medical expert with the [SSA], he has knowledge of [the] disability program and access to all of the medical evidence of record when he offered his opinion." Id. at 16. Based on this opinion, the ALJ found that plaintiff "is capable of simple work activity with limited social interaction and she should work in an environment free of fast-paced production requirements involving a stable setting." Id. at 15.

Dr. Perrone's 2019 opinion found that plaintiff had mild limitations in understanding, remembering, and applying information; concentrating, persisting or maintaining pace; and adapting or managing oneself; moderation limitations in understanding, remembering, and carrying out simple instructions; interacting appropriately with the public, supervisors, and co-workers; and marked limitations in responding appropriately to usual work situations and to changes in a routine work setting. See T. at 738-42. Dr. Perrone opined that, "[i]n this case I believe that [plaintiff's] opiate addiction account for the functional limitations reported in the 9f and 14f evaluations." Id. at 739. However, Document 14f is not a functional report—it contains a Farnham Family Services Pre-Admission Document for plaintiff's intake into the drug rehabilitation program, copies of drug screens while she was in the clinic, and her attendance record for group and individual therapies. See id. at 663-712. To

27

support the opined marked and mild limitations, Dr. Perrone cited "Doc 4f/pgs 4 & 5 ** In evaluations where opiate ab[u]se disorder <u>was</u> reporte[d][.]  My analyses are based on a comprehensive evaluation in 2017.  In that evaluation, substance abuse <u>was</u> <u>not</u> reported."  <u>Id.</u> at 742 (emphasis added).  Document 4F is Dr. Shapiro's 2017 consultative evaluation where substance abuse was not reported.  <u>See</u> <u>id.</u> at 314-18.  It is therefore unclear to which document or evaluation Dr. Perrone is referring when he reached the aforementioned limitations, which the ALJ does not acknowledge or clarify.  Further, Dr. Perrone stated that he relied on "Doc 9f/pg 2" for the moderate limitations, and that there was "[n]o information provided in the documentation reviewed" for the limitations he left blank.  <u>Id.</u> at 738.  Dr. Perrone explained that

> [t]hese ratings are based on a 2017 evaluation by a psychiatric social worker in 2017.  In an earlier 2017 examination by a psychiatrist, these limitations were not present.  The major discrepancy between these two evaluations in the same year was that the earlier evaluation reported no substance disorder, while the later one referred to an opiate use disorder.

<u>Id.</u>  Document 9F is Ms. Atkinson's <u>2018</u> opinion in which she does not opine about plaintiff's ability to handle complex instructions or decisions.  <u>See</u> <u>id.</u> at 358 (emphasis added).

Dr. Perrone explained that he believed it was plaintiff's opiate addiction that accounted for Ms. Atkinson's greater opined limitations, but fails to reconcile Dr. Shapiro's opinions that, with no drug abuse reported, plaintiff appeared unable to manage money, had problems that "may significantly interfere with [her] ability to function on a daily basis[,]" and had moderate-marked limitations in regulating emotions, controlling behavior, and maintaining well-being.  <u>Id.</u> at 317, 738-42.  Moreover, both Dr. Shapiro and Ms. Atkinson found that plaintiff was limited in her ability to maintain

personal hygiene or "adhere to basic standards of neatness and cleanliness." Id. at 358; 317.  Dr. Shapiro, Ms. Atkinson, and Dr. Perrone opined that plaintiff had limitations in her ability to concentrate, id. at 739, but the ALJ failed to explain explicitly how the RFC considers a specific concentration limitation or why one is not warranted. See id. at 15-16; see, e.g., Ross, 2015 WL 1189559, at *11 (determining that the ALJ sufficiently accounted for the plaintiff's limitations in concentration "by including the limitation that Ross could only sustain attention and concentration for up to two hours at a time.").

The Court, however, recognizes that the ALJ's decision does not need to mirror any one medical opinion, and "the ALJ is not obligated to reconcile every conflicting shred of medical testimony[.]"  Bleil, 2017 WL 1214499, at *6 (citations omitted).  As explained, the ALJ accounted for plaintiff's limitations reflected in the various medical opinions by limiting her to slow pace work with simple and routine tasks, away from others, that does not involve significant change or decision making.  See T. at 14. Moreover, Dr. Perrone's opined limitations are extremely similar to Ms. Atkinson's and Dr. Shapiro's; and where they differ, the ALJ sufficiently explained why she gave the latter opinions less weight.  Compare id. at 738-39, 742, with id. at 317, 358; see Paula W., 2019 WL 5150078, at *11 (expressing confusion as to how the ALJ reconciled his RFC where he gave significant weight to the state agency physician who opined "considerably less restrictive limitations" than those found by the plaintiff's treating psychiatrist, but the state agency physician relied on the treating psychiatrist's opinion). As such, remand is not warranted on this ground.

## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 14, 2022
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

30